MEADOWS v. ROOS.

4-5603 132 S. W. 2d 818

Opinion delivered October 30, 1939.

*George F. Edwardes,* for appellant.
*T. B. Vance,* for appellee.

McHANEY, J. Appellant and his wife, Mrs. Carmen Meadows, are residents of Texarkana, Texas. Mrs. Meadows, prior to August 4, 1936, had been engaged in business selling ladies' ready-to-wear merchandise. Sometime prior to said date she had been adjudicated a bankrupt, and, in order to obtain credit for her to go back into business again, the appellant, her husband, undertook in writing with appellees to guarantee the payment of her debts.

Appellees are engaged in business in Dallas, Texas, selling at wholesale ladies' ready-to-wear merchandise. On said August 4, 1936, appellant executed to appellees his written contract by which he agreed to guarantee the payment to them of "any and all indebtedness which Mrs. R. S. Meadows . . . may now or at any time hereafter owe the aforesaid firm . . .; but it is understood that I (we) shall not be required to pay hereunder more than the sum of twenty-five hundred and no one hundredths ($2,500) dollars in the aggregate including legal interest, and when I (we) shall have paid the said firm the indebtedness of said debtor amounting to said sum, this obligation shall be thereby satisfied and discharged. It being understood that this is a continuing guaranty, and said liability shall continue so long as debtor shall owe the amount herein guaranteed, notwithstanding debtor may have purchased and paid for other merchandise during the life of this guaranty. That is to say, the purchase and payment by debtor to the extent of the amount of this guaranty does not extinguish the guaranty, but same shall continue so long as debtor may be indebted to said firm.''

By reason of said guaranty contract appellees sold and delivered to appellant's wife a large amount of mer-

chandise and she was indebted to them on August 18, 1938, in the sum of $1,766.88. On that date, August 18, 1938, appellant and his wife called upon appellees personally in their place of business in Dallas, Texas, for the purpose of purchasing additional merchandise, and they did purchase additional merchandise to the extent of $128.25, and at the request of appellees, appellant renewed the guaranty contract mentioned above by executing and delivering a new guaranty contract which is identical in form and substance with the one of August 4, 1936. Guaranty contract of August 4, 1936, was not surrendered by appellees, but was kept by them. The result of the transaction just related was that Mrs. Meadows was indebted to appellees on August 18, 1938, in the sum of $1,895.13. Payments were thereafter made on this indebtedness which reduced it to $1,000, which amount was due and unpaid on January 20, 1939, when Mrs. Meadows filed insolvency proceedings in the Miller chancery court. In these proceedings she named appellees as one of her creditors in the sum of $1,000. She prayed that she be declared insolvent, that her exemptions be set apart to her; that a receiver be appointed to convert her assets into cash, to be distributed among her creditors; and upon final hearing she be discharged and released from further liability. A receiver was appointed and he unsuccessfully sought to induce appellees to sign a stipulation to release and acquit Mrs. Meadows from further liability upon payment of a portion of her debt.

Thereafter, on February 6, 1939, appellees filed this action in the Miller chancery court against appellant and his wife and the receiver, alleging that appellant and his wife were indebted to them in the sum of $1,000 and that the receiver had in his possession certain articles of property upon which they claimed a paramount lien and that they were entitled either to a lien on certain property or to have it sold separately and the proceeds therefrom impressed with a vendor's lien in their favor, and denied Mrs. Meadows' right to exemptions under the law of Texas, of which state she was a resident. They

prayed judgment against Mrs. Meadows and appellant upon his guaranty contract, which was made an exhibit to the complaint, in the sum of $1,000. Neither Mrs. Meadows nor the receiver made any defense to this action. Appellant defended on a number of grounds set out in his answer, some of which will be hereafter discussed. Trial resulted in a decree for appellees and a judgment was entered in their favor against appellant and his wife in the sum of $1,000, from which is this appeal.

Appellant's first insistence for a reversal is that there was no new consideration moving to him for the execution of the new guaranty contract of August 18, 1938, because no merchandise was furnished under that contract, and that the agreement was that appellees would furnish additional merchandise and give his wife additional credit up to $2,500. He is wrong in both contentions. As above stated additional merchandise was sold and credit extended to Mrs. Meadows on August 18, 1938, to the extent of $128.25, which when added to the account then due and owing by her in the sum of $1,766.88 made a total of $1,895.13. The extension of this additional credit was a valuable consideration. There is no showing that Mrs. Meadows ordered and that appellees refused to ship additional merchandise up to $2,500, after said date. Moreover, the plain provisions of the guaranty contract did not require appellees to extend credit to Mrs. Meadows up to $2,500, including her then indebtedness, but by its plain, and, unambiguous terms, it required appellant to pay the then existing indebtedness and any additional indebtedness thereafter incurred not to exceed $2,500. Appellant attempts to engraft upon the written contract a condition that was not contained therein, that is, that appellees orally agreed at the time, prior to the execution of the guaranty, to extend Mrs. Meadows' credit up to $2,500 and to ship her additional goods therefor. Appellant could not do this, as oral testimony is not admissible to alter or vary the terms of a written instrument. We, therefore, hold that there was no breach of the written contract

by appellees in failing to furnish additional goods. This also disposes of appellant's contention that appellees were guilty of fraud in representing that they would deliver $2,500 worth of merchandise to appellant when they had no such intention at the time of making said representation.

It is finally contended by appellant that his liability under the written contract was compromised and settled by him by payment to appellees of the sum of $595 which reduced the account to a balance of $1,000 owing by Mrs. Meadows to appellees. The facts are that on or about November 15, 1938, appellees' salesman called upon Mrs. Meadows to collect the account. At that time she owed $1,595. She was unable to pay the account, but the salesman induced her to give appellees a series of post-dated checks, amounting in the aggregate to $595, to reduce the indebtedness down to $1,000. Appellant was called into a conference with Mrs. Meadows and the salesman, and he agreed to pay the post-dated checks as they matured and did pay them. He now contends that he was to be released upon his guaranty contract. She testified that the salesman agreed that the contract would not be used if she and her husband would give this series of post-dated checks. In answer to the question as to what promise she claimed the salesman made to her to get those checks, she answered: "He promised that the agreement Mr. Meadows had gone into with Mr. Freedman would not be used and it would be released if we gave those post-dated checks." She was supported in her testimony by appellant and another witness. This testimony was contradicted by the salesman who testified positively that he made no such agreement, that he had no authority to make such an agreement. He testified that he called Mr. Freedman over the long distance telephone and told him Mrs. Meadows would give a series of post-dated checks on the account which would reduce it down to $1,000 and that Mr. Freedman said that it would be all right to take the checks. He further said that he only did what Mr. Freedman directed him to do and that he settled no accounts with-

out permission; that he had never settled an account for less than one hundred cents on the dollar. The court resolved this question of fact in favor of appellees and we can not say its finding in this regard is against the preponderance of the evidence.

No error appearing, the decree is affirmed.